## HARRY KELLEY v. STATE.

No. A-2469.  Opinion Filed April 4, 1931.
(297 Pac. 819.)

William M. Matthews, for plaintiff in error.

Charles West, Atty. Gen., and R. McMillan, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.  The plaintiff in error, hereinafter called defendant, was convicted in the county court of Okmulgee county of interfering with a fire boss of mine No. 6, Dewar, Okla., and was sentenced to pay a fine of $100.

The testimony in brief shows that the defendant in this case was the foreman of mine No. 6, Dewar, Okla., and that the prosecuting witness, Montgomery, was one of the fire bosses for said mine; that the foreman of the mine employs the fire boss.  On the morning of March 19, 1914, the prosecuting witness came to the mine about 4 o'clock a. m., at which time the night shift was supposed to come out of the mine, but the night shift did not come out of the mine until 7:15, owing to some additional work they had to finish before they could leave the mine.  When the defendant came to the mine, he learned the night shift had not yet come out; that the regulations required the fire boss to inspect the mine from two and one-half to

three hours before another shift was permitted to go into the mine, and, as it was then 6 or 7 o'clock in the morning, which would have made it too late in the day for the day shift to go into the mine, the foreman did what is said in mining parlance, "put the mine on the bum"; that is, he advised the day shift the mine would not run that day, and told the fire boss it would not be necessary to inspect it that morning. The testimony further tends to show that the prosecuting witness Montgomery and the foreman of the mine had some controversy as to the foreman giving the fire boss his time that morning, and the foreman told him he would give him his time, which he did, and discharged him as fire boss of the mine. The defendant's explanation is that, as it was so late in the morning for the fire boss to go into the mine owing to the night shift not coming out until 7 o'clock, it was best not to run the mine that day, and that, when the prosecuting witness wanted his time, he gave it to him and discharged him from the employment of the mine.

The defendant has assigned several errors alleged to have been committed by the trial court. The only one that we deem necessary to consider is assignment 4, which is as follows:

"The court erred in failing to sustain the demurrer of the plaintiff in error to the defendant in error's evidence."

The section of the statute that the defendant is charged with violating is section 7601, Comp. St. 1921, which reads as follows:

"It shall be unlawful for any person, company or corporation owning and operating any mine in the state or operating as lessee, any mine in this state, or any officer, agent, representative, or mine foreman of such company or corporation or labor organization to interfere, or at-

tempt to interfere in any way with the fire boss, of any mine in this state, in the performance of his duties, or by any sort of threat or threats, or duress, to intimidate, or attempt to intimidate such fire boss in the performance of his duties or by persuasion or promise, or of extending hope of reward in any way to such fire boss in the performance of his duties, or to attempt in any way to cause or induce such fire boss to fail or neglect to perform any duty required of him by the mining laws of this state."

An examination of the record clearly shows that there was no criminal intent upon the part of the defendant in asking the fire boss not to go into the mine on the morning of the 19th of March, 1914, for the reason that the mine was not going to run that day. The testimony is insufficient to show that the defendant in this case interfered with either the spirit or the letter of the law, as contemplated by the Legislature in the enactment of section 7601, supra, which it is contended that the defendant violated. This court has repeatedly held that, where there was competent testimony to go to the jury, it would not disturb the verdict, but, where there was no competent testimony, it was its duty to reverse the case.

There being no competent testimony to sustain the judgment, the case is reversed.

CHAPPELL, J., concurs. EDWARDS, J., absent, not participating.